UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br>    v.<br>RALPHS GROCERY COMPANY d/b/a FOOD FOR LESS,<br>                Defendant. | Civil No. 07CV1858 J (RBB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

      Before the Court is the Motion for Summary Judgment of Defendant Ralphs Grocery Company dba Food 4 Less ("Defendant"). [Doc. No. 30.] The Court has considered this Motion, Plaintiff's Opposition, [doc. no. 35], and Defendant's Reply, [doc. no. 36]. For the reasons stated below, this Court **GRANTS** the present Motion.

*Factual and Procedural Background*

      Defendant hired Pamela Lovell as a cashier at Defendant's El Centro store in December 2002. Undisputed Fact No. 1. During her entire tenure at Ralphs, Lovell was a bargaining unit member of the United Food & Commercial Workers' International Union, Local 1167 ("Union"). Undisputed Fact No. 3.

      In July 2004, Lovell used Defendant's formal dispute resolution program to complain about, *inter alia*, harassment that did not involve her personally. Undisputed Fact Nos. 5-7. In response,

Defendant hired an outside investigative agency to investigate Lovell's complaints. Undisputed Fact No. 8. Through the investigation, some of Lovell's internal complaints were substantiated. Undisputed Fact No. 9.

In 2005, due to an unrelated case, Defendant was required to provide the Equal Employment Opportunity Commission ("EEOC") Chicago Office with all of the complaints that its dispute resolution program received over a certain period of time, which included Lovell's July 2004 complaint. Undisputed Fact Nos. 17-19. The EEOC Chicago Office sent a letter to Lovell, as it did to all others who had submitted complaints during this time period, asking those individuals questions about their complaints. Undisputed Fact No. 20. Defendant sent a letter to the same individuals, explaining that it would "not take negative action" against anyone who would respond to the questionnaire. Undisputed Fact No. 21. Lovell responded to the EEOC's questionnaire and returned it. Deposition of Pamela Lovell ("Lovell Decl.") ¶ 4.

In December 2005, Defendant held a Christmas party. Lovell Decl. ¶ 6. Becky Griffins, a coworker, made sexually inappropriate comments to another coworker, Josephina Carrillo. *See id.* The alleged victim's husband became upset over the incident, and Lovell provided him with the EEOC's information. *Id.*

In late December 2005, two employees notified Chuck Rasmussen, Store Director, of comments Lovell allegedly made in the store. *See* Undisputed Fact No. 26. Ron Summers, a "Person In Charge," told the assistant manager that he had overheard Lovell tell a customer that there was bad management at the store and that the customer should not shop there. Deposition of Ron Summers ("Summers Depo.") 10:15-17, 15:21-16:4. The assistant manager in turn notified Rasmussen of Lovell's alleged conduct. Summers Depo. 20:24-21:6.

Another employee approached Rasmussen and told him that an employee had overheard Lovell telling a store vendor that one of the cashiers had been sexually harassed at a Christmas party and that an investigation was underway. Rasmussen Depo. 41:2-9.

Based on these employee complaints, on December 31, 2005, Rasmussen suspended Lovell pending further investigation. Undisputed Fact No. 30; [Doc. No. 35 at 4]. During the investigation

1  Rasmussen interviewed and obtained written statements from several individuals including Carlos
2  Rodriguez, Carrillo, and Summers.
3      Rodriguez was the Mission Foods vendor whom Lovell allegedly told that sexual harassment
4  had occurred at the Christmas party.  In his written statement, Rodriguez asserted that while buying
5  some items in the store, Lovell told him that a girl was sexually harassed at the Christmas party and that
6  someone was going to be checking into the allegations.  Undisputed Fact No. 34.
7      Carrillo, Lovell's coworker and the alleged victim of sexual harassment, affirmed in her written
8  statement that rumors were circulating around the store that she had been sexually harassed by Griffith
9  at the Christmas party.  She further stated that Lovell asked her if she had been sexually harassed, and
10 that Carillo replied, "No."  Undisputed Fact No. 35.
11     Summers, another coworker of Lovell's, described in his written statement how he heard Lovell
12 tell a customer not to shop at the store and that the people were awful and had the worst customer
13 service.  Summers Depo. 22:16-23:10.
14     After reviewing the written statements obtained by Rasmussen, Defendant's Senior Labor
15 Relations Representative, Bruce Wright, determined that Lovell had violated company policy by making
16 disparaging remarks to a customer not to shop at the store and had spread false rumors regarding sexual
17 harassment in the store.  Declaration of Bruce Wright "(Wright Decl.") ¶ 2.  Based on Lovell's length of
18 service and because she did not have any other discipline in her file, Wright made the recommendation
19 to construct a settlement with the Union to reinstate Lovell and transfer her with a disciplinary
20 suspension.  Undisputed Fact No. 39.  Lovell's Union representative, Jerry Espinoza, agreed with
21 Lovell's suspension and transfer in lieu of termination.  Undisputed Fact No. 44.
22     Wright negotiated a settlement and release ("Agreement") with Espinoza to reinstate her after
23 transferral to the Calexico Food 4 Less.[1]  The Agreement stated that Defendant agreed to suspend Lovell
24 in lieu of discharge.  Undisputed Fact No. 47.  Paragraph 2 of the Agreement stated:

---

28  [1] Under the Union's collective bargaining agreement, Lovell could only be transferred to a store within twenty-five miles from her home.  Wright Depo. 74:19-21.  The store in Calexico was the only one within twenty-five miles of Lovell's home.  Wright Decl. ¶ 4.

> The Employee will immediately withdraw any/all grievances or claims filed with any State or Federal agency with respect to, or because of this matter. Employee shall also forbear from hereafter asserting any claims against the Employer for any alleged harm flowing from employment with Employer, to date.

Wright Depo. Ex. 6.

Lovell refused to sign the Agreement. Undisputed Fact No. 52. Without a non-precedent setting agreement in place, Lovell's termination became final. Undisputed Fact. No. 54. Defendant then terminated Lovell on January 30, 2006 for violation of company policy and inappropriate and unprofessional conduct. Undisputed Fact. No. 55.

On September 24, 2007, the EEOC San Diego Office ("Plaintiff") filed a Complaint with this Court on behalf of Lovell. [Doc. No. 1.]  Defendant filed this Motion for Summary Judgment on November 17, 2008. [Doc. No. 30.]

### *Legal Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted when the moving party demonstrates that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Id.* at 323. If the moving party does not bear the burden of proof at trial, it need not produce evidence to negate the non-moving party's claim, but rather can satisfy the initial burden by demonstrating that the non-moving party failed to make a showing sufficient to establish an essential element of that party's case. *Id.* at 322-23; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

In making its determination as to the moving party's initial burden, the court "may limit its review to the documents submitted for the purpose of summary judgment and those parts of the records

specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The court is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden of establishing the absence of a genuine issue of material fact, then the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is insufficient for the party opposing summary judgment to "rest on mere allegations or denials of his pleadings." *Id.* Rather, the party opposing summary judgment must "by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Genuine issues of material fact remain if the issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court must not make credibility determinations, weigh any evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 256.

### *Discussion*

Lovell argues that she was suspended and terminated in retaliation for: (1) making her 2004 complaint; (2) responding to the Chicago EEOC questionnaire; (3) giving the EEOC's information to a coworker's husband; and (4) not signing the Agreement that would reinstate her. Undisputed Fact No. 56; Deposition of Pamela Lovell ("Lovell Depo.") 30:5-31:2; 95:4-11.

In order to establish a *prima facie* retaliation claim under 42 U.S.C. § 2000e-3(a), Title VII, a plaintiff must demonstrate that she was involved in a protected activity, the employer subjected plaintiff to an adverse employment action, and a causal link existed between these two elements. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002).

Once the plaintiff proves her prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the action taken. *See, e.g.*, *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985) (finding for defendant employer because employer had presented "well documented performance deficiencies"). To rebut the plaintiff's prima facie case of retaliation, the defendant is only required to articulate some legitimate, nondiscriminatory reason for its action and is not required to prove absence of discriminatory motive. *See Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) ("[T]he employer's burden is satisfied if he simply explains what he has done or produc[es] evidence of legitimate nondiscriminatory reasons." (internal quotation marks omitted)).

If the employer articulates a legitimate reason for its action, "the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required . . . under Fed.R.Civ.P. 56(c)." *Metoyer v. Chassman*, 504 F.3d 919, 931 n.6 (9th Cir. 2007) (quoting *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)). Plaintiff may then offer evidence that the employer's proffered reason is pretextual, and "'very little evidence of discriminatory motive [is needed] to raise a genuine issue of fact' as to pretext." *Little*, 301 F.3d at 969 (9th Cir. 2002) (quoting *Strother v. So. Cal. Permanente Med. Group*, 79 F.3d 859, 870 (9th Cir. 1996)).

Considering all the evidence in the light most favorable to Plaintiff, the Court **FINDS** that Plaintiff has successfully raised a triable issue as to whether her second, third, and fourth claims establish a prima facie case of retaliation.

The Court **FINDS** that Plaintiff has raised a triable issue of fact as to whether Lovell's activities constituted opposition or participation activities under Title VII. Title VII provides that an employer may not "discriminate against any individual . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a).

Lovell's 2004 complaint constitutes opposition because she reasonably believed that Defendant's employees had engaged in illegal harassment of Lovell's coworkers. Additionally, Lovell's

refusal to sign the Agreement was in opposition to Defendant's practice of forcing its employees to choose between continuing to work or waiving their right to file claims against Defendant, and this opposition could have been based on a reasonable belief that this practice was unlawful. *See, e.g.*, *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (holding that regardless of whether the opposed action was a violation of Title VII, the plaintiff "would be able to state a retaliation claim if he could show that his belief that an unlawful employment practice occurred was 'reasonable.'").

Lovell's response to the Chicago EEOC's questionnaire and her act of giving the EEOC's information to a coworker's husband may be construed as participation because she assisted others in enforcing their Title VII rights. *See, e.g.*, *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (holding that a male employee who suffered retaliation after complaining both formally and informally to the EEOC about the employer's treatment of women may bring a retaliation claim against the employer).

Next, the Court **FINDS** that Lovell suffered an adverse employment action. Lovell's suspension and subsequent termination certainly constitute actions "materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Finally, the Court **FINDS** that Plaintiff has raised a triable issue as to whether the protected activities involved in her second, third, and fourth claims are causally related to her suspension and termination. Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. *See Miller v. Fairchild Indus.*, 797 F.2d 727, 731-32 (9th Cir. 1986). Plaintiff is unable to establish causation for Lovell's first claim: seventeen months lapsed between Lovell's July 2004 complaint and her suspension in December 2005, and this gap is too large to support an inference of retaliation. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation.").

In contrast, Lovell's December 31, 2005 suspension occurred less than two months after her November 25, 2005 response to the Chicago EEOC's questionnaire as well as her act of giving the

1   EEOC's information to a coworker's husband in December 2005.  Lovell similarly refused to sign the
2   Agreement less than a month before she was terminated on January 30, 2006.  This interval of less than
3   two months may indicate Defendant's retaliatory intent.  *See, e.g., Miller*, 797 F.2d at 731-32 (holding
4   that evidence that plaintiffs were laid off less than two months after engaging in protected activity was
5   sufficiently probative of defendant's alleged retaliatory motivations to withstand a summary judgment
6   motion on grounds of failure to establish a prima facie case).  Although Defendant argues that it was
7   unaware of Lovell's allegedly protected activities, [doc. no. 30 at 3, 11], Plaintiff asserts that Defendant
8   did have actual knowledge, *see* Lovell Decl.¶ 5, and the Court must view the evidence in the light most
9   favorable to Plaintiff.

10       Because the Court **FINDS** that Plaintiff has successfully raised a triable issue of fact as to
11  whether her second, third, and fourth claims establish a prima facie case of retaliation, the burden shifts
12  to Defendant to rebut Plaintiff's prima facie case by showing that it had a legitimate, nondiscriminatory
13  reason for the action taken against Plaintiff.

14       The Court **FINDS** that Defendant has met its burden of presenting a legitimate, non-retaliatory
15  reason for suspending and terminating Lovell.  Defendant asserts that it took adverse action against
16  Lovell because she made a disparaging remark to a customer, telling him not to shop at the store, and
17  spread false information regarding the sexual harassment of a coworker.  Defendant argues that Lovell's
18  comments were in violation of Defendant's Rules and Regulations, which state, "Conduct manifesting
19  clear disregard for the interest of your Company and/or its patrons" is "cause[] for immediate dis-
20  missal."  Wright Decl. ¶ 10; Wright Decl. Ex. B.

21       As evidence of Lovell's comments, Defendant presents three witness statements gathered prior
22  to Lovell's termination.  Carlos Rodriguez, the store's Mission Foods vendor, affirmed that while
23  buying some items in the store, Lovell told him that a girl was sexually harassed at the Christmas party
24  and that someone was going to be checking into it.  Undisputed Fact No. 34.  Josephina Carrillo,
25  Lovell's coworker, affirmed in her written statement that rumors were circulating around the store that
26  she had been sexually harassed at the Christmas party and that Lovell asked her if she had been sexually
27  harassed, to which Carrillo replied, "No."  Undisputed Fact No. 35.  Ron Summers, another coworker of
28

Lovell's, described how he heard Lovell tell a customer not to shop at the store and that the people were awful and had the worst customer service. Summers Depo. 22:16-23:10; Summers Depo. Ex. 1.

Plaintiff does not dispute that Rodriguez and Carrillo made these statements. Undisputed Fact Nos. 34-35. Plaintiff does attack Summers's credibility by pointing out that Summers reported a slightly different version of Lovell's alleged comment at his deposition compared to his initial statement of the incident three years earlier. [Doc. No. 35 at 14-15.] However, Plaintiff does not dispute that in both versions, Summers stated that he heard Lovell tell a customer not to shop at Defendant's store.[2] For these reasons, the Court **FINDS** that no triable issues of fact exist as to whether Defendant has produced evidence that its suspension and termination of Plaintiff were based on legitimate, non-retaliatory reasons.

Because the Court **FINDS** that Defendant has carried the burden of satisfactorily articulating a legitimate, non-retaliatory reason for the adverse employment action, the burden of production shifts back to Plaintiff to show that the alleged explanation is a pretext for impermissible retaliation. This burden merges with Plaintiff's ultimate burden of persuading the court that Lovell is the victim of retaliation. *See Burdine*, 450 U.S. at 256.

Plaintiff claims that it can show pretext through both direct and circumstantial evidence. [Doc. No. 35 at 16.] Either direct or circumstantial evidence may satisfy plaintiff's burden as to pretext. "Only a small amount of direct evidence is necessary in order to create a genuine issue of material fact as to pretext." *See, e.g.,Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). However, circumstantial evidence of pretext must be both "specific" and "substantial." *See Bergene v. Salt River Project Agr. Imp. & Pwr. Dist.*, 272 F.3d. 1136, 1142 (9th Cir. 2001). Circumstantial evidence typically relates to such factors as plaintiff's job performance and the timing of events.

The Court **FINDS** these arguments unpersuasive and **FINDS** that Plaintiff has failed to carry its burden of proving pretext. As direct evidence of retaliation, Plaintiff cites the "Franco email" and the "Rasmussen statement," calling them "clear evidence of discriminatory animus because they discuss her

---

[2] Shortly after the incident, Summers wrote a statement indicating that Lovell told a customer not to shop at the store because the people were awful and had the worst customer service. At his deposition three years later, Summers testified that Lovell told the customer, "[W]e have bad management here, you shouldn't shop at the store." [Doc. No. 35 at 14-15.]

'threat' to file an age discrimination claim in the context of taking adverse action against her." [Doc. No. 35 at 16.]

The email written by Bonnie Franco, Defendant's Director of Employee Relations & HR Administration, contains no evidence of retaliatory intent. Franco notes that Lovell filed a harassment complaint in 2004, but goes on to describe problems with Lovell's work demeanor: that she was "causing disruption in the store" by "spreading rumors/gossip, threatening to file a complaint against many individuals in the store." [Doc. No. 35, Ex. 7.] These comments do not establish Defendant's intent to retaliate against Lovell because of her involvement in protected activities. Any "adverse action" Defendant would take against Lovell would be to resolve her performance-related issues, not in retaliation. At most the email mentions Lovell's 2004 complaint, but as the Court **HOLDS** above, Plaintiff cannot make out a prima facie case that Defendant retaliated against Lovell for making the 2004 complaint because the complaint occurred far too long–seventeen months–before Lovell's suspension. Additionally, in the sections of Charles Rasmussen's deposition referenced by Plaintiff, page 38, lines 12-22 and page 48, lines 22-24, Rasmussen merely acknowledges the marking of a fax as Exhibit 7 and affirms that he made "statements regarding an issue that was brought to my attention." [Doc. No. 35 at 16; *see* Doc. No. 35, Ex. 8.] These portions of Rasmussen's deposition reveal absolutely no evidence of discriminatory intent.

Plaintiff also fails to present circumstantial evidence sufficient to establish pretext. "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene*, 272 F.3d at 1142 (9th Cir.2001). The only circumstantial evidence that Plaintiff points to is the timing of Lovell's suspension and termination. Plaintiff correctly argues that very close temporal proximity of the protected activity and the adverse employment action can serve as evidence of pretext as well as causation. *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1069-70 (9th Cir. 2003) (finding that a nine-day lapse between the employee's protected activity and her termination, in addition to other evidence supporting employee's retaliation claim, was sufficient to establish a triable issue of fact as to whether the employer's explanations for her termination were pretextual). However, timing alone, accompanied by evidence of Lovell's performance problems as well as a complete lack of evidence of discriminatory intent, is neither specific nor substantial circumstantial evidence. As such,

Plaintiff "has not shown that either . . . a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Villiarimo*, 281 F.3d at 1063. The Court **FINDS** that Plaintiff has failed to carry its burden of proving pretext.

A grant of summary judgment is often unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the "'elusive factual question' of intentional discrimination." *Miller*, 797 F.2d at 732-33 (quoting *Burdine*, 450 U.S. at 255 n.8). However, courts agree that summary judgment is appropriate when, as here, "evidence of discriminatory intent is totally lacking." *Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment

### *Conclusion*

For the above reasons, this Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED: May 18, 2009

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: Magistrate Judge Brooks
All Counsel of Record